IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SERAFINA LICCARDI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| IAN SHORR; PARAMOUNT | § | Case No. 3:22-cv-02423-K-BT |
| PICTURES/VIACOM; JEFF BEZOS; | § | |
| AMAZON PRIME VIDEO; and | § | |
| AMAZON.COM WORLDWIDE | § | |
| DISTRIBUTION, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this trademark and copyright infringement case is
Defendants Paramount Pictures/Viacom, Jeff Bezos, and Amazon.com Services
LLC's (the "Moving Defendants") Motion to Dismiss Plaintiff's Amended
Complaint Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (ECF No.
33). Specifically, the Moving Defendants seek dismissal of *pro se* Plaintiff Serafina
Liccardi's Amended Complaint for failure to state a claim as to all Defendants, and
for lack of personal jurisdiction as to Defendant Jeff Bezos. For the reasons
explained, the District Court should **GRANT** the motion and **DISMISS** all of
Liccardi's claims and causes of action. The District Court should also **DENY**
Liccardi's requests to further amend her pleadings (ECF Nos. 35, 41, 42), as
amendment would be futile.

1

## Background

This case arises out of Liccardi's allegations that Ian Shorr and the Moving Defendants plagiarized her autobiography, turned it into a movie titled *Infinite*, and distributed the movie worldwide for profit, in violation of federal intellectual property laws. *See* Am. Compl. (ECF No. 30). While the Amended Complaint and Response to the Magistrate Judge's Questionnaire are somewhat difficult to parse, the Court liberally construes Liccardi's pleadings to assert three claims: copyright infringement, trademark infringement, and fraud in violation of 18 U.S.C. § 1341.[1] *See id.* at 9 (ECF No. 30); Am. Resp. Quest. 5 (ECF No. 31).

Succinctly stated, Liccardi alleges that she is the author of "The Return of the Divine Seraphim" (the "Autobiography"), an "autobiographical work of art based on [her] real-life experience of a Divine Intervention." *See* Am. Compl. 11. (ECF No. 30). On October 13, 2021, she discovered that Defendant Ian Shorr had "pirated and plagiarized" her Autobiography for a movie called *Infinite*, using the premise from the first page of her book: "[a] Super-hero that comes to save the earth continuously through time." *Id.* at 12 (ECF No. 30). Liccardi further alleges that she confronted Shorr on Twitter, and that his response was to post a tweet stating that "if a spec script has been around long enough, it should be considered a piece of established IP by the studio system"—admitting, according to Liccardi, to "plucking [her] story out of a 'system.'" *Id.* (ECF No. 30). She alleges that

---

[1] Liccardi's Amended Complaint (ECF No. 30) is the live pleading in this action. *See* Order (ECF No. 44).

Paramount Pictures/Viacom produced the movie; the movie is streaming on Amazon Prime Video and being distributed worldwide; and Shorr and the Moving Defendants are profiting from the misuse of her intellectual property. *Id.* at 14 (ECF No. 30).

Defendants Paramount Pictures/Viacom, Jeff Bezos, and Amazon.com Services LLC[2] filed the pending Motion to Dismiss (ECF No. 33) and Brief in Support (ECF No. 34), arguing that the Court should dismiss Liccardi's claims because she fails to state a claim upon which relief can be granted as to all Defendants, and because this Court lacks personal jurisdiction over Bezos. The Moving Defendants further point out that Liccardi has not properly served Ian Shorr, also named as Defendant in her Amended Complaint, but that all their arguments in the Motion apply equally to the claims against him. Liccardi failed to timely file a response to the Motion to Dismiss. Instead, three months later, she filed a Request for Leave to File a Third Amended Complaint (ECF No. 35), which Defendants oppose (ECF Nos. 36, 37), as well as two other submissions which the Court construes as requests for leave to further amend her pleadings (ECF Nos. 41, 42). Defendants' Motion to Dismiss and Liccardi's requests for leave to amend are ripe for determination.

---

[2] Amazon.com Services LLC avers that Liccardi incorrectly names it as Amazon Prime Video in the Amended Complaint. *See* Discl. (ECF No. 15). Liccardi also names Amazon.com Worldwide Distribution as Defendant, another entity that Defendants contend does not exist. *See* Br. 1 n.1 (ECF No. 34).

### Legal Standards and Analysis

#### I.    Moving Defendants' Rule 12(b)(6) Motion

To survive Defendants' Rule 12(b)(6) motion to dismiss, Liccardi's complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Liccardi's factual allegations must "'raise [her] right to relief above the speculative level,'" but they do not need to be detailed. *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (citing *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 417 (5th Cir. 2010)). Liccardi claims have facial plausibility if she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to [Liccardi]." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

Additionally, it is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*,

636 F.2d 986, 988 (5th Cir. Unit A Feb. 1981) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (citing *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989)).

Judged against these standards, the Court should dismiss Liccardi's claims against Defendants due to her failure to state a claim. As to her copyright infringement claim, Defendants argue that Liccardi has failed to sufficiently allege that Defendants had a reasonable opportunity for access to the Autobiography or that the Autobiography and the movie *Infinite* are substantially similar. *See* Br. 7 (ECF No. 34). Defendants further argue that Liccardi does not state a claim for trademark infringement because she has not sufficiently alleged that there is a likelihood of confusion between the two works. *See id.* at 14–15 (ECF No. 34). Finally, Defendants argue that Liccardi's fraud claim fails because there is no private right of action for such a claim. *See id.* at 16 (ECF No. 34).

A. Copyright Infringement

To avoid dismissal of her copyright infringement claim, Liccardi must plead sufficient facts to show (1) ownership of a valid copyright and (2) copying of constituent elements that are original. *Architettura, Inc. v. DSGN Assoc., Inc.*, 2018 WL 3575878, at *3 (N.D. Tex. July 25, 2018) (citing *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007)). The first element requires allegations that the work

is original, can be copyrighted, and that the plaintiff has complied with statutory formalities. *Id*. (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1107–08 (5th Cir. 2007)). The second element requires allegations of both factual copying and substantial similarity. *Id*. A plaintiff can establish factual copying by direct or circumstantial evidence; the latter of which requires a showing that (1) the defendant had access to the copyrighted work and (2) the two works contain similarities that are probative of copying. *Id*. Substantial similarity requires that the copyrighted expressions in the two works are sufficiently alike that the copyright to the original has been infringed. *Id*. To determine whether two works are substantially similar, the court should make a side-by-side comparison between the original and the copy to determine whether a layperson would view the two works as substantially similar. *Vallery v. American Girl, LLC*, 697 F. App'x 821, 824 (5th Cir. 2017).

Here, Defendants do not dispute that Liccardi has satisfied the standard for pleading the first element of a copyright infringement claim in that she alleges that she holds a valid copyright for her work. *See* Br. 5 (ECF No. 34). But Defendants argue that Liccardi's pleading falls short in several respects as to the remaining elements: factual copying and substantial similarity. First, they argue that Liccardi has not provided sufficient factual allegations of direct copying, nor has she sufficiently alleged that Defendants had access to her copyrighted work as would be required to plead factual copying by circumstantial evidence. *See id*. at 7–8 (ECF No. 34). They also argue that Liccardi's Amended Complaint does not allege any

substantial similarities between the protectable elements of the two works beyond what she describes as the "premise" of her Autobiography. *Id*. at 8–11 (ECF No. 34).

Indeed, Liccardi does not allege that Defendants directly copied her Autobiography; nor has she put forth facts that support a plausible allegation that Defendants had access to her work. A plaintiff in a copyright infringement case is required to plead that a defendant had "a reasonable probability of access" to the copyrighted work in order to plausibly allege factual copying by circumstantial evidence. *See Knowles*, 512 F.3d at 152. Access has been defined to include "an opportunity to view the copyrighted work." *Architettura, Inc.*, 2018 WL 3575878, at \*5 (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978)).

Although Liccardi includes an allegation in her Amended Complaint that her Autobiography was "established and circulating" on the internet "well before Ian Shorr plagiarized it," Am. Compl. 11 (ECF No. 30), her allegation is wholly conclusory. She puts forth no specific facts in the Amended Complaint that would plausibly allege that any Defendant viewed or had an opportunity to view her Autobiography. She has alleged that Ian Shorr was active on Twitter at one point in time, but not that her Autobiography was accessible on Twitter or elsewhere that any Defendant could have found it. *See Batiste v. Lewis*, 976 F.3d 493, 503 (5th Cir. 2020) (a work's widespread dissemination in a relevant market may show a "reasonable opportunity for access"). Her allegations fail to raise any right to relief

7

above the speculative level. *Knowles*, 512 F.3d at 153 ("bare possibility" of access is insufficient to satisfy requirement to show "reasonable probability of access").

Liccardi also falls short on the final element of her copyright claim, substantial similarity, by failing to allege that "the copyrighted expressions in the two works are sufficiently alike that the copyright to the original work has been infringed." *Knowles*, 512 F.3d at 152. The court must make a side-by-side comparison[3] of the original and the alleged copy to determine whether a layperson would view the two works as substantially similar. *See Vallery v. American Girl, LLC*, 697 F. App'x 821, 824 (5th Cir. 2017). Courts may often decide substantial similarity as a matter of law, on either a motion to dismiss or on summary judgment. *Randolph v. Dimension Films*, 630 F. Supp. 2d 741, 746 (S.D. Tex. 2009).

Although Liccardi alleges in her Amended Complaint that Shorr "used the entire premise from the very first page of [her] book **VERBATIM**," Am. Compl. 12 (ECF No. 30) (emphasis in original), she does not highlight any factual similarities whatsoever between her book and *Infinite*, nor does she plead that the two works are substantially similar at all, beyond this generalized "premise." Liccardi does not explain where in the film the premise appears "verbatim." In fact, Liccardi points out the *differences* between the two works in her Amended

---

[3] Liccardi did not provide the Court with a copy of her Autobiography, either with her Original or her Amended Complaint, but both the Autobiography and *Infinite* appear in the record in their entirety as appendices to Defendants' Brief in Support of their Motion to Dismiss for Failure to State a Claim (ECF Nos. 27-1, 27-2).

Questionnaire, alleging that Shorr "eliminat[ed] Jesus Christ and the Spirit God Himself" and "turned the true story of [her] encounter with the Holy Spirit into a fake Hollywood piece of junk." Am. Resp. Quest. 2 (ECF No. 31). Without identifying the protectable elements of her book that are substantially similar to *Infinite*, Liccardi cannot state a claim of copyright infringement that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

Even if Liccardi had pointed the Court to any similarities, a comparison of the two works reveals that there are no "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, [or] sequence of events." *Randolph*, 630 F. Supp. 2d at 746. Liccardi's Autobiography and the film *Infinite* share no characters in common, nor does *Infinite* track the plot, setting, or themes of the Autobiography. As Defendants point out, and as Liccardi explains in her Amended Complaint, Liccardi's work is a "collection of original illustrations, poetry, and narrative musings" based on her own life and experience. *See* Br. 17 (ECF No. 34); Am. Compl. 11 (ECF No. 30) (describing the Autobiography as "a work of art based on [Liccardi's] real-life experience of a divine intervention" and "a work of art based on the correlation of [her] name, Serafina, and the biblical angel of God"). The film *Infinite*, on the other hand, follows "a male character who is capable of remembering his past lives and joins forces with his fellow 'Infinites' to stop an endless cycle of life and reincarnation." Br. 17 (ECF No. 34). The Court should conclude that a layperson would not find substantial similarity—or indeed, any similarity at all—between Liccardi's Autobiography and *Infinite*, and dismiss

her claim in its entirety. *See Randolph*, 630 F. Supp. 2d at 747–48 (dismissing a copyright claim for failure to allege substantial similarity where the characters, plot, themes, and tones of the works were very different).

Because Liccardi has failed to sufficiently allege facts to plead factual copying and substantial similarity, both essential elements of her claim of copyright infringement, the Court should dismiss this claim.

B. <u>Trademark Infringement</u>

In her Amended Response to the Magistrate Judge's Questionnaire, Liccardi alleges that Defendant Ian Shorr used a trademark protected design from the cover of her book—an upright infinity sign in the shape of an hourglass—"on the cover of his plagiarized book, which is likely to cause confusion with [her] original protected designed bookcover [sic]." *See* Am. Resp. Quest. 2 (ECF No. 31). Defendants respond that Liccardi has not alleged facts to show that the mark is legally protectable or show a likelihood of confusion, and therefore that she has not stated a claim of trademark infringement.

To state a claim for trademark infringement, "a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). To be protectable, a mark "must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Id.* A likelihood of confusion is "the gravamen for any action of trademark infringement." *Jim S. Adler, PC v. McNeil Cons. LLC*, 10 F.4th 422, 426 (5th Cir.

10

2021). Courts use a non-exhaustive list of factors to evaluate whether there is a likelihood of confusion: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. *Id.* at 427. The likelihood of confusion element is fact-intensive, but "where the factual allegations regarding consumer confusion are implausible [], a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion." *Id.* at 428–29.

Here, Liccardi has not alleged a claim of trademark infringement. First, the Amended Complaint and Questionnaire are devoid of any facts suggesting that the design at issue—"an upright infinity sign in the shape of an hourglass"—is actually a registered mark or that the generic mathematical symbol is distinctive in any way that would make it protectable by law. *See* Am. Compl. (ECF No. 30); Am. Resp. Quest. (ECF No. 31). Indeed, Liccardi has not alleged sufficient facts to show her design is eligible for protection because she fails to allege it has ever been used in commerce. *F.M.D. Holdings, LLC v. Regent Fin. Corp.*, 2021 WL 5883136, at *21 (N.D. Tex. Dec. 10, 2021) (explaining that a party seeking to assert trademark-related claims under the Lanham Act must generally show the mark was "used in commerce") (quoting 15 U.S.C. §§ 1114(1)). Use in commerce means the bona fide use of a mark in the ordinary course of trade. 15 U.S.C. § 1127. Liccardi fails to allege that her work has ever been sold, or even offered for sale, in the ordinary course of trade. In the absence of such allegations, Liccardi fails to state a claim of

trademark infringement. *See Sgromo v. Bestway Enter. Co. Ltd.*, 2019 WL 4686719, at *8 (E.D. Tex. Aug. 29, 2019), report and recommendation adopted, 2019 WL 4673756 (E.D. Tex. Sept. 25, 2019) (granting motion to dismiss trademark claim because plaintiff provided no facts to show use in commerce). Further, beyond the conclusory statement that the cover of *Infinite* is "likely to cause confusion with [her] original protected designed bookcover [sic]," Liccardi includes no other factual allegations that would raise her claim beyond speculation to a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678.

Because Liccardi includes no plausible facts to support her claim of trademark infringement, the Court should dismiss this claim.

C. Fraud

Liccardi's third claim is for fraud under the federal mail fraud statute, 18 U.S.C. § 1341. She alleges throughout her Amended Complaint and Amended Questionnaire that Defendants' fraud has caused her "irreparable harm." *See* Am. Compl. 4 (ECF No. 30); Am. Resp. Quest. 4 (ECF No. 31). However, as Defendants point out in their Motion to Dismiss, 18 U.S.C. § 1341 is a criminal statute that provides no private cause of action. *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 346 (5th Cir. 1977) ("We agree with the district court that our [prior decision] forecloses any such claim of a private right of action under [18 U.S.C. § 1341]"); *Gipson v. Deutsche Bank Nat. Trust Co.*, 2015 WL 11120538, *19 (N.D. Tex. Oct. 27, 2015) (dismissing plaintiff's 18 U.S.C. § 1341 claim because there is no private cause of

action available). Because there is no private cause of action available under the federal mail fraud statute, the Court should dismiss Liccardi's fraud claims.

       D. <u>Claims against Defendant Ian Shorr</u>

Liccardi has not properly served Defendant Ian Shorr and he has not appeared in this lawsuit. *See* Proof of Service (ECF No. 21) (indicating that the U.S. Marshal was unable to serve Shorr at the address Liccardi provided, as it was not his place of employment); Notice (ECF No. 20) (providing the Court with what Liccardi believes to be Ian Shorr's address). Nonetheless, the Court should dismiss Liccardi's claims against him along with the claims against the Moving Defendants. The Fifth Circuit has held that where a defending party establishes that a plaintiff has no cause of action, this defense generally also inures to the benefit of a defaulting defendant, and district courts have extended this holding to unserved defendants. *Armendariz v. Chowaiki*, 2016 WL 8856919, *19 (W.D. Tex. Mar. 31, 2016) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001)); *Roa v. City of Denison*, 2017 WL 9287012, at *18 (E.D. Tex. Aug. 29, 2017), report and recommendation adopted, 2017 WL 4675062 (E.D. Tex. Oct. 18, 2017) (dismissing claims against unserved defendants upon finding that plaintiff had failed to state a claim against the appearing defendants, "as defaulting and/or unserved defendants may generally derive the benefit of a defendant party's demonstration that the plaintiff has no cause of action"). Here, Liccardi asserts the same claims against Shorr as against the Moving Defendants, and the Rule 12(b)(6) analysis is

not unique to any Defendant. Therefore, the Court should dismiss Liccardi's claims against Shorr alongside her claims against the Moving Defendants.

## II.   Bezos's Rule 12(b)(2) Motion

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the Court must determine whether (1) defendants have established "minimum contacts" with the forum state; and (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The first prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party

14

or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9. In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987).

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772

F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

The Court should dismiss Liccardi's claims against Defendant Jeff Bezos because Liccardi has not carried her burden of establishing this Court's personal jurisdiction over Bezos. When faced with a 12(b)(2) motion to dismiss, the party seeking to assert jurisdiction—here, Liccardi—must present sufficient facts to make out a prima facie case supporting the exercise of personal jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). In other words, in response to Bezos's argument that personal jurisdiction is improper, it was Liccardi's burden to show that Bezos in fact had minimum contacts with the state of Texas and that fair play and substantial justice would not be offended by subjecting him to jurisdiction here.

Liccardi has failed to show that the exercise of personal jurisdiction over Bezos would be proper. She references Bezos only once in the Amended Complaint, on the "Certificate of Interested Persons" page, where she provides his name and an address in Washington. *See* Am. Compl. 2 (ECF No. 30). He does not appear in the Statement of Facts, Statement of Claim, or Summary of Facts sections of the

Amended Complaint. *See generally id.* (ECF No. 30). And Liccardi did not file a Response to Defendants' Motion, where she might have provided additional argument that would establish Bezos's possible minimum contacts with Texas. Liccardi's Amended Response to the Magistrate Judge's Questionnaire is similarly devoid of any factual allegations related to Bezos or his potential contacts with Texas, mentioning only her conclusion that Bezos "[d]istribut[ed] and [gained financially] from Plagiarized/Counterfeit book and movie without permission—currently." Am. Resp. Quest. 3 (ECF No. 31).

Given that Liccardi's Amended Complaint contains no factual allegations whatsoever that would support a prima facie showing of personal jurisdiction over Bezos, the Court should find that Liccardi has failed to satisfy her burden here, despite the liberal pleading standards afforded to *pro se* litigants. *Smith v. Skopos Fin., LLC*, 2019 WL 2374883, at *6 (N.D. Tex. Jan. 22, 2019) (Horan, J.), report and recommendation adopted, 2019 WL 1552033 (N.D. Tex. April 10, 2019) (granting defendant's 12(b)(2) motion to dismiss because "[plaintiffs] failed to respond to [defendant's] 12(b)(2) motion to dismiss—much less have they come forward to establish a prima facie case that the Court has jurisdiction over [defendant]"). The Court should grant the Moving Defendants' 12(b)(2) motion to dismiss and dismiss all claims as they relate to Bezos for lack of personal jurisdiction.

III. <u>Leave to Amend</u>

Federal Rule of Civil Procedure Rule 15(a) provides that "[a] party may amend its pleading once as a matter of course." Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave. *Id.* Leave to amend "is by no means automatic" and is "entrusted to the sound discretion of the district court." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1988)). But Rule 15(a) requires that courts freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (noting that motions for "leave to amend [should be granted] 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'"). The court may consider a variety of factors when deciding whether to grant leave to amend, "including undue delay, bad faith or dilatory motive on the party of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones*, 427 F.3d at 994 (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

More than three months after the Moving Defendants filed their Motion to Dismiss, Liccardi moved for leave to file a Third Amended Complaint (ECF No. 35), seeking to add at least 20 new defendants and raising claims apparently unrelated to those appearing in the Amended Complaint. *See* Req. Leave to Am.

(ECF No. 35). Defendants oppose this request. According to Defendants, Liccardi's request is procedurally deficient in that she filed it without first conferring with them as required by the Local Rules in this District. *See* Br. Resp. 4 (ECF No. 37). But more importantly, Defendants argue, the Court should deny Liccardi's request to amend her complaint for a third time because the proposed amendments do nothing to cure the existing deficiencies in her pleadings, and further amendment would be futile. *Id.* at 5–6 (ECF No. 37). In the time since Defendants filed their opposition to Liccardi's Motion to Amend, Liccardi has filed what the Court construes as two additional requests to amend her pleadings. (ECF Nos. 41, 42).

When the denial of leave to amend is based on grounds of futility, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard, under which "all well-pleaded facts are viewed in the light most favorable to the plaintiff" and "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which requires the complaint to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Carter v. H2R Rest. Holdings, LLC*, 2017 WL 1653622, at \*4 (N.D. Tex. Apr. 3, 2017), report and recommendation adopted, 2017 WL 1608751 (N.D. Tex. Apr. 28, 2017). If "[t]he allegations are thus enough to raise a right to relief above the speculative level and the plaintiff's claim for relief is plausible on its face, the amendment is not futile." *Id.* (internal quotations omitted). A failure to comply with procedural rules can also be grounds to deny a party leave to amend. *See Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005).

First, Liccardi's Request suffers from procedural deficiencies. It is unclear whether the list of new defendants and new claims Liccardi included with her Request comprises the entirety of her proposed third amended complaint—she did not append a copy of her proposed amended pleading as an exhibit, as the Local Rules require. *See* LR 15.1. Instead, she petitions the Court for leave to "include the following discovery of defendants to this claim [] and for the following reasons[,]" and lists those defendants and reasons. Req. Leave to Am. (ECF No. 35). And as Defendants point out, Liccardi did not confer with them before filing this request to amend, in violation of another Local Rule. "[A]ll parties, even those who proceed without counsel, must abide by the local rules of this Court." *Jones v. Dretke*, 2004 WL 1698291, at *2 (N.D. Tex. July 28, 2004), report and recommendation adopted, 2004 WL 1944054 (N.D. Tex. Aug. 31, 2004). The Court has previously reminded Liccardi that there are conference requirements in the Local Rules. *See* E-Order (ECF No. 17). Liccardi's additional two requests to amend suffer from the same deficiencies. *See* Mot. Am. Quest. (ECF No. 41); Mot. to File Am. (ECF No. 42).

However, even ignoring these procedural deficiencies and assuming that the list of new defendants and claims Liccardi has included in her Request comprise the entirety of her proposed amended pleading, the Court should deny Liccardi leave to amend. The proposed amendments do not address any of the deficiencies Defendants identify in their Motion to Dismiss, and beyond conclusory statements and names of proposed new Defendants, there are no new factual allegations that

would cure the deficiencies identified in Liccardi's claims of copyright or trademark infringement. The Court already attempted to elicit from Liccardi additional facts sufficient to state a claim for relief. But her Response to the Magistrate Judge's Questionnaire fails to supply the necessary facts to satisfy the pleading standard. Liccardi also previously availed herself of the opportunity to amend her Complaint after Defendants filed their first Motion to Dismiss, and as discussed above, that Amended Complaint fails to state a cognizable claim. Allowing Liccardi to amend her complaint a third time when none of the additional claims appear cognizable or able to cure the deficiencies in her previous pleadings would be futile, and the Court should deny her leave to do so. *See Carter*, 2017 WL 1653622, at *4–6.

As the Court has already provided Liccardi with several opportunities to state a claim for relief, and it is clear that further amendment would be futile, the Court should dismiss her claims without leave to amend. *Schiller v. Physicians Resource Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

## Conclusion

The Court should **GRANT** Defendants' Motion to Dismiss in its entirety and **DISMISS** Liccardi's claims against the Moving Defendants and Ian Shorr under Rule 12(b)(6) for failure to state a claim and **DISMISS** her claims against Jeff Bezos under Rule 12(b)(2) for lack of personal jurisdiction. The Court should also **DENY** Liccardi's Request for Leave to File an Amended Complaint.

**SO RECOMMENDED.**

December 11, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).